JUDGE KATHLEEN CARDONE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED

2023 FEB -6 PM 2: 33

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                DEPUTY

|  |  |  |
|---|---|---|
| **CRYSTAL MALDONADO,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **KRAUSE AND KINSMAN LAW LLC,** a | § | |
| Missouri limited liability company and **DECIBEL** | § | |
| **LLC dba DECIBEL ADVERTISING LLC,** a | § | EP23CV0051 |
| Wyoming limited liability company | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff CRYSTAL MALDONADO ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant KRAUSE AND KINSMAN LAW LLC ("K&K") is a corporation organized and existing under the laws of Missouri and can be served via registered agent Adam William Krause at 5430 Fairway Rd., Fairway, MO 66205.

3. Defendant DECIBEL LLC dba DECIBEL ADVERTISING LLC ("Decibel") is a corporation organized and existing under the laws of Wyoming and can be served via registered agent Northwest Registered Agent, LLC at 5900 Balcones Drive Ste 100, Austin, TX 78731.

## JURISDICTION AND VENUE

4. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case.

5. **Personal Jurisdiction.** This Court has specific personal jurisdiction over Defendant because they have repeatedly placed calls to Texas residents, and derive revenue and represent Texas residents in lawsuits and other legal matters.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
### OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the*

*Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at \*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

21. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

22. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

23. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

24. The use or employment by any person of a false, misleading, or deceptive act or practice"
causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code §
17.50.

## FACTUAL ALLEGATIONS

25. Plaintiff successfully registered her personal cellular telephone number ending in -6342 on
the National Do-Not-Call Registry on June 26, 2022, and was successfully registered on the
DNC at least 31 days before she received the calls in question.

26. Plaintiff registered her phone on the Do-Not-Call Registry to obtain solitude from invasive
and harassing telemarketing phone calls. The telemarketing calls prevented Plaintiff from
using her phone for legitimate purposes.

27. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone
line, with a phone number ending in -6342.

28. At all times material hereto. Plaintiff was the subscriber of the telephone number ending in --
6342 and paid her cell phone bill through Metro PCS.

29. On October 19, 2022, Plaintiff received the first of at least ninety-nine (99) phone calls to her
personal cell phone ending in -6342 from an unknown caller soliciting Camp Lejeune lawsuit
representation. The phone calls Plaintiff received were not related to an emergency purpose
and were sent without Plaintiff's express written consent.

30. All phone calls Plaintiff received contained one of three area codes: 754, 586, 561.

31. On November 21, 2022, at 12:14 PM Plaintiff received a phone call from phone number 754-
356-6183. Plaintiff did not answer the phone and a prerecorded message was left on
Plaintiff's voicemail.

6

32. On November 21, 2022, at 1:33 PM Plaintiff received a phone call from a similar phone number to the one mentioned in the previous paragraph, 754-356-6182. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

33. On November 22, 2022, at 7:17 AM Plaintiff received a phone call from phone number 586-287-7960. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

34. On November 22, 2022, at 12:37 PM Plaintiff received a phone call from the same phone number to the one mentioned in the previous paragraph, 586-287-7960. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

35. On November 22, 2022, at 1:20 PM Plaintiff received a phone call from the same phone number to the one mentioned in the previous paragraph, 586-287-9909. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

36. On November 23, 2022, at 9:48 AM Plaintiff received a phone call from the same phone number to the one mentioned in the previous paragraph, 586-287-8116. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

37. On November 25, 2022, at 9:33 AM Plaintiff received a phone call from phone number 561-894-0791 Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

38. On November 28, 2022, at 11:52 AM Plaintiff received a phone call from the same phone number to the one mentioned in the previous paragraph, 586-287-7972. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

39. On November 28, 2022, at 11:06 AM Plaintiff received a phone call from a similar phone number to the one mentioned in the previous paragraph, 561-894-0791. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

40. On November 28, 2022, at 12:26 PM Plaintiff received a phone call from a similar phone number to the one mentioned in the 31st paragraph, 754-356-6148. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

41. On November 29, 2022, at 12:40 PM Plaintiff received a phone call from a similar phone number to the one mentioned in the previous paragraph, 754-356-6134. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

42. On November 29, 2022, at 2:12 PM Plaintiff received a phone call from a similar phone number to the one mentioned in the previous paragraph, 561-894-1180. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

43. On November 30, 2022, at 11:45 AM Plaintiff received a phone call from a similar phone number to the one mentioned in the previous paragraph, 561-778-1927. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

44. On December 1, 2022, at 11:21 AM Plaintiff received a phone call from a similar phone number to the one mentioned in the previous paragraph, 561-725-7944. Plaintiff again did not answer the phone and the same prerecorded message was left on Plaintiff's voicemail.

45. All prerecorded voicemails left by phone numbers starting with area codes 754, 586, and 561 were versions of, "Hey there, this is Kelly. It seems I got your voicemail. Please call me back any time to discuss claims and potential compensation regarding Camp Lejeune. Once again, call me back to discuss potential compensation in regards to Camp Lejeune. Thank you and have a nice day. We are available 24 hours 7 days a week. Do not hesitate to reach out."

8

46. On January 6, 2023, at 9:32 AM Plaintiff received a phone call from phone number 313-476-0329 which contained the exact same prerecorded message. Plaintiff followed the prompts from the prerecorded message in hopes of discovering the identity of the unknown caller. Plaintiff went through the process and was sent a contract via DocuSign for Defendant K&K.

47. On January 6, 2023, at 9:51 AM Plaintiff answered a phone call from phone number 504-901-2081 and was greeted by an agent who attempted to get Plaintiff to sign the contract sent to Plaintiff in paragraph 46.

48. The contract emailed to Plaintiff via DocuSign displayed Defendant Decibel's contact information when clicking on the Certificate of Completion.

49. On information and belief, all phone calls displayed in Table A are phone calls made by Defendant Decibel on behalf of and under the direction of Defendant K&K.

50. Table below displays calls made to Plaintiff by Defendant Decibel:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 10/19/2022 | 3:18 PM | 754-356-6139 | |
| 2 | 10/20/2022 | 11:09 AM | 754-356-6134 | |
| 3 | 10/20/2022 | 12:17 PM | 754-356-6156 | |
| 4 | 10/20/2022 | 2:38 PM | 754-356-6148 | |
| 5 | 10/21/2022 | 12:23 PM | 754-356-6168 | |
| 6 | 10/22/2022 | 12:25 PM | 754-356-6165 | |
| 7 | 10/24/2022 | 3:02 PM | 754-356-6142 | |
| 8 | 10/25/2022 | 4:15 PM | 754-356-6176 | |
| 9 | 10/26/2022 | 2:49 PM | 754-356-6159 | |
| 10 | 10/26/2022 | 3:56 PM | 754-356-6179 | |
| 11 | 10/27/2022 | 4:26 PM | 754-356-6148 | |
| 12 | 10/27/2022 | 5:33 PM | 754-356-6123 | |
| 13 | 10/29/2022 | 11:39 AM | 754-356-6153 | |
| 14 | 10/29/2022 | 12:44 PM | 754-356-6180 | |
| 15 | 10/30/2022 | 2:25 PM | 754-356-6169 | |
| 16 | 11/02/2022 | 11:19 AM | 754-356-6173 | |
| 17 | 11/02/2022 | 2:06 PM | 754-356-6173 | |

| | | | | |
|---|---|---|---|---|
| 18 | 11/02/2022 | 12:27 PM | 754-356-6140 | |
| 19 | 11/02/2022 | 2:51 PM | 754-356-6142 | |
| 20 | 11/03/2022 | 3:13 PM | 754-356-6182 | |
| 21 | 11/03/2022 | 5:34 PM | 754-356-6158 | |
| 22 | 11/04/2022 | 11:21 AM | 754-356-6183 | |
| 23 | 11/04/2022 | 12:29 PM | 754-356-6126 | |
| 24 | 11/04/2022 | 12:30 PM | 754-356-6126 | |
| 25 | 11/04/2022 | 12:30 PM | 754-356-6126 | |
| 26 | 11/04/2022 | 12:51 PM | 754-356-6183 | |
| 27 | 11/04/2022 | 2:48 PM | 754-356-6170 | |
| 28 | 11/07/2022 | 11:16 AM | 754-356-6148 | |
| 29 | 11/11/2022 | 9:12 AM | 754-356-6185 | |
| 30 | 11/11/2022 | 10:19 AM | 754-356-6152 | |
| 31 | 11/11/2022 | 12:41 PM | 754-356-6177 | |
| 32 | 11/12/2022 | 2:08 PM | 754-356-6136 | |
| 33 | 11/12/2022 | 4:26 PM | 754-356-6141 | |
| 34 | 11/13/2022 | 6:16 PM | 754-356-6178 | |
| 35 | 11/17/2022 | 1:20 PM | 754-356-6173 | |
| 36 | 11/21/2022 | 12:14 PM | 754-356-6183 | Left Prerecorded Voicemail |
| 37 | 11/21/2022 | 1:33 PM | 754-356-6182 | Left Prerecorded Voicemail |
| 38 | 11/22/2022 | 4:59 PM | 754-356-6131 | |
| 39 | 11/22/2022 | 5:39 PM | 754-356-6188 | |
| 40 | 11/22/2022 | 6:18 PM | 754-356-6165 | |
| 41 | 11/28/2022 | 12:26 PM | 754-356-6148 | Left Prerecorded Voicemail |
| 42 | 11/29/2022 | 12:40 PM | 754-356-6134 | Left Prerecorded Voicemail |
| 43 | 12/23/2022 | 10:11 AM | 754-356-6175 | |
| | | | | |
| 1 | 10/19/2022 | 9:32 AM | 586-287-8075 | |
| 2 | 10/20/2022 | 5:36 PM | 586-287-7932 | |
| 3 | 10/23/2022 | 1:08 PM | 586-287-8039 | |
| 4 | 10/29/2022 | 12:28 PM | 586-287-7983 | |
| 5 | 11/01/2022 | 9:52 AM | 586-287-7982 | |
| 6 | 11/01/2022 | 10:46 AM | 586-287-8105 | |
| 7 | 11/03/2022 | 3:12 PM | 586-287-8247 | |
| 8 | 11/05/2022 | 12:46 PM | 586-287-8113 | |
| 9 | 11/08/2022 | 1:04 PM | 586-287-7797 | |
| 10 | 11/10/2022 | 12:35 PM | 586-287-8179 | |
| 11 | 11/11/2022 | 5:09 PM | 586-287-8207 | |

| 12 | 11/15/2022 | 2:48 PM | 586-287-8240 | |
| 13 | 11/17/2022 | 7:06 PM | 586-287-7978 | |
| 14 | 11/19/2022 | 10:10 AM | 586-287-8279 | |
| 15 | 11/22/2022 | 7:17 AM | 586-287-7960 | Left Prerecorded Voicemail |
| 16 | 11/22/2022 | 12:37 PM | 586-287-7960 | Left Prerecorded Voicemail |
| 17 | 11/22/2022 | 1:20 PM | 586-287-9909 | Left Prerecorded Voicemail |
| 18 | 11/23/2022 | 9:48 AM | 586-287-8116 | Left Prerecorded Voicemail |
| 19 | 11/25/2022 | 9:46 AM | 586-287-7998 | |
| 20 | 11/27/2022 | 11:12 AM | 586-287-7807 | |
| 21 | 11/28/2022 | 11:52 AM | 586-287-7972 | Left Prerecorded Voicemail |
| 22 | 11/30/2022 | 12:24 PM | 586-287-8095 | |
| 23 | 12/23/2022 | 10:17 AM | 586-287-0572 | |
| 24 | 01/04/2023 | 11:32 AM | 586-287-8045 | 2 min 44-sec call.  Call dropped. Soliciting Camp Lejeune. Began with a prerecorded message. |
| 25 | 01/04/2023 | 4:09 PM | 586-287-7717 | 1 min 12-sec call.  Call dropped. Soliciting Camp Lejeune. Began with a prerecorded message. |
| | | | | |
| | | | | |
| 1 | 10/19/2022 | 2:10 PM | 561-778-1928 | |
| 2 | 10/21/2022 | 11:17 AM | 561-778-1540 | |
| 3 | 10/22/2022 | 11:19 AM | 561-778-1540 | |
| 4 | 10/24/2022 | 12:39 PM | 561-894-1180 | |
| 5 | 10/28/2022 | 11:17 AM | 561-725-7944 | |
| 6 | 10/29/2022 | 3:02 PM | 561-710-2180 | |
| 7 | 10/30/2022 | 12:08 PM | 561-710-2180 | |
| 8 | 10/31/2022 | 5:24 PM | 561-894-1196 | |
| 9 | 11/01/2022 | 12:13 PM | 561-739-1668 | |
| 10 | 11/07/2022 | 1:40 PM | 561-894-1927 | |
| 11 | 11/09/2022 | 12:24 PM | 561-710-2180 | |
| 12 | 11/11/2022 | 10:21 AM | 561-894-1353 | |
| 13 | 11/12/2022 | 2:53 PM | 561-933-8917 | |
| 14 | 11/14/2022 | 11:07 AM | 561-894-1196 | |
| 15 | 11/17/2022 | 11:02 AM | 561-778-1539 | |
| 16 | 11/17/2022 | 11:46 AM | 561-739-1668 | |
| 17 | 11/252022 | 9:34 AM | 561-894-0791 | Left prerecorded voice message |
| 18 | 11/25/2022 | 11:07 AM | 561-778-1928 | |
| 19 | 11/27/2022 | 10:30 AM | 561-894-1254 | |
| 20 | 11/27/2022 | 11:14 AM | 561-725-7944 | |

| 21 | 11/28/2022 | 11:06 AM | 561-894-0791 | Left prerecorded voice message |
| 22 | 11/29/2022 | 2:12 PM | 561-894-1180 | Left prerecorded voice message |
| 23 | 11/30/2022 | 11:45 AM | 561-778-1927 | Left prerecorded voice message |
| 24 | 12/01/2022 | 11:21 AM | 561-725-7944 | Left prerecorded voice message |
| | | | | |
| | | | | |
| 1 | 01/06/2022 | 9:51 AM | 504-901-2081 | |
| 2 | 01/06/2022 | 2:04 PM | 504-901-2081 | |
| 3 | 01/06/2022 | 2:08 PM | 504-901-2081 | |
| 4 | 01/06/2022 | 2:24 PM | 504-901-2081 | |
| 5 | 01/06/2022 | 3:58 PM | 504-901-2081 | |
| 6 | 01/07/2022 | 9:22 AM | 504-901-2081 | |
| | | | | |
| 1 | 01/06/2022 | 9:32 AM | 313-476-0329 | Prerecorded voice message. Gave information in order to determine who was behind the phone calls. |

51. Plaintiff was never stationed at Camp Lejeune and never asked to be called to be solicited Camp Lejeune suit services.

52. Each and every call displayed one of three area codes belonging to Defendant Decibel during the dates between November 2022 and January 2023.

53. Plaintiff searched the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp on January 3, 2023, and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code § 302.101.

54. Defendant K&K and Defendant Decibel do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

55. Defendant K&K and Defendant Decibel do not qualify for an exemption under Texas Business and Commerce Code § 302.101.

56. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the

unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

57. Ms. Maldonado has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

58. No emergency necessitated the calls.

## VICARIOUS LIABILITY OF DEFENDANT K&K

59. Defendant K&K is vicariously liable for the telemarketing calls that were generated by Defendant Decibel

60. The FCC is tasked with promulgating rules and orders related to the enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

61. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

62. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

63. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave

13

[A]llowing the seller to avoid potential liability by outsourcing its
telemarketing activities to unsupervised third parties would leave
consumers in many cases without an effective remedy for telemarketing
intrusions. This would particularly be so if the telemarketers were
judgment proof, unidentifiable, or located outside the United States, as is
often the case. Even where third-party telemarketers are identifiable,
solvent, and amenable to judgment limiting liability to the telemarketer
that physically places the call would make enforcement in many cases
substantially more expensive and less efficient, since consumers (or law
enforcement agencies) would be required to sue each marketer separately
in order to obtain effective relief. As the FTC noted, because sellers may
have thousands of independent marketers, suing one or a few of them is
unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

64.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual
relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if
the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

65. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's
liability requires a finding of formal agency and immediate direction and control over the
third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

66. To the contrary, the FCC—armed with extensive data about robocallers and Americans'
complaints about them—determined that vicarious liability is essential to serve the TCPA's
remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at
6587 ¶ 36.

67. Vicarious liability is important because reputable, traceable, and solvent companies that
benefit from illegal telemarketing are "in the best position to monitor and police TCPA
compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

14

68. Defendant K&K is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

69. Defendant K&K is prohibited from engaging in direct solicitation of perspective clients with whom they do not have a prior existing relationship. K&K is barred from conducting solicitation by both state and national bar association rules.

70. Defendant K&K hired Defendant Decibel with the explicit intent to violate state and national bar association rules prohibiting solicitation. K&K is violating bar association rules for economic profit and failure to hold them vicariously liable will undermine the bar association rules against solicitation.

71. Defendant K&K instructed Defendant Decibel on which states to bombard with phone calls and directed them to scout and target potential clients for their Camp Lejeune lawsuit.

72. Defendants knowingly and actively accepted business that originated through illegal telemarketing.

73. Defendant K&K knew (or reasonably should have known) that Defendant Decibel was violating the TCPA on its behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

74. By hiring a company to make calls on their behalf, Defendant K&K "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

75. Moreover, Defendant K&K maintained interim control over the actions of Defendant Decibel.

76. For example, Defendant K&K had absolute control over whether, and under what circumstances, it would accept a potential client from Defendant Decibel.

77. Furthermore, Defendant K&K had day-to-day control over the actions of Defendant Decibel,
including the ability to prohibit them from using an ATDS or prerecorded messages to
contact potential clients of Defendant K&K and the ability to require them to respect the
National Do Not Call Registry.

78. Defendant K&K also gave interim instructions to Defendant Decibel by providing lead-
qualifying instructions and lead volume limits.

79. Defendant K&K donned Defendant Decibel with apparent authority to make the calls at
issue.

80. Apparent authority turns on whether a third party believes the principal authorized its agent
to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03
cmt. c.

81. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's
manifestation must be directed to a specific third party in a communication made directly to
that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

82. A principal may make a manifestation "by directing an agent to make statements to third
parties or directing or designating an agent to perform acts or conduct negotiations, placing
an agent in a position within an organization, or placing an agent in charge of a transaction or
situation." Restatement § 2.03 cmt. c.

83. Finally, the FCC has held that called parties may obtain "evidence of these kinds of
relationships . . . through discovery, if they are not independently privy to such information."
*Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of
the telemarketer "should be sufficient to place upon the seller the burden of demonstrating

16

that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

84. Defendant K&K is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a client when Defendant Decibel continuously solicited Plaintiff Camp Lejeune's legal representation.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

85.    Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

86. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

87. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests through Plaintiff's cellular telephone line.

88. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

89. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of her cell phone.

### Plaintiff's cell phone is a residential number

90. All calls at issue were to Plaintiff's cellular phone ending in -6342 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff does not maintain any landline phones and has not for at least 5 years. She primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending

17

and receiving text messages. Furthermore, Plaintiff has her cell phone registered in her personal name and pays the cell phone from her personal accounts. Plaintiff's phone number ending in -6342 is also not primarily used for any business-related purpose.

### Violations of the Texas Business and Commerce Code § 302.101

91.    Defendant's actions violated the Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

92. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

93. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

94. Business and Commerce Code § 302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under § 302.101.

## I.    FIRST CLAIM FOR RELIEF

### (Non-Emergency Prerecorded Robocalls to Cellular Telephone, 47 U.S.C. § 227(b)(1)(A)(iii))

#### (Against all Defendants)

95. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-94.

96. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making illegal telemarketing non-emergency prerecorded phone calls to Plaintiff's cellular telephone number without her prior express written consent.

97. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

98. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

## II.    SECOND CLAIM FOR RELIEF (Violations of the TCPA Sales Prohibitions 47 C.F.R. § 64.1200(c))

#### (Against all Defendants)

99. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-94.

100.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

101.    Plaintiff was statutorily damaged at least ninety-nine (99) times under 47 U.S.C. §
        227(c)(3)(F) by Defendants through the telephone calls described above, in the amount of
        $500 per call.

102.    Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful
        violation of 47 U.S.C. § 227(c)(3)(F).

### III.    THIRD CLAIM FOR RELIEF

#### (Violations of The Texas Business and Commerce Code 302.101)

#### (Against All Defendants)

103.    Plaintiff realleges and incorporates by reference each and every allegation set forth in
        paragraphs 1-94.

104.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute
        multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-
        registered solicitation calls to Plaintiff's cellular telephone number without her prior express
        written consent.

105.    Ms. Maldonado is entitled to an award of up to $5,000 in damages for each such knowing
        or willful violation. **Texas Business and Commerce Code 302.302(a).**

106.    Ms. Maldonado is entitled to an award for all reasonable costs of prosecuting the action,
        including court and investigation costs, attorneys' fees, deposition expenses, and discovery
        costs. **Texas Business and Commerce Code 302.302(d).**

### IV.    PRAYER FOR RELIEF

        WHEREFORE, Plaintiff Crystal Maldonado prays for judgment against the defendants
jointly and severally as follows:

20

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA § 227(b) intentional violations jointly and severally against the corporation for 99 calls;

E.      An award of $1500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for 99 calls;

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101;

G.      An award to Ms. Maldonado of damages, as allowed by law under the TCPA;

H.      An award to Ms. Maldonado of interest, costs and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.


January 30, 2023                                                      Respectfully submitted,


                                                                     Crystal Maldonado
                                                                     Plaintiff, Pro Se
                                                                     8749 Coloma Circle
                                                                     El Paso, TX 79907
                                                                     915-305-6342

## I.     Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: January 30, 2023

Crystal Maldonado
Plaintiff, Pro Se
8749 Coloma Circle
El Paso, TX 79907
915-305-6342